ÁNGEL SAMUEL BONILLA, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada; DEPARTAMENTO POLICÍA INSULAR, patrono.

Núm. 277.—*Sometido:* Diciembre 13, 1943. *Resuelto:* Mayo 5, 1944.

*Ismael Soldevila,* abogado del recurrente; *Joaquín Correa Suárez,* abogado del Fondo del Seguro del Estado, por la Comisión Industrial, demandada.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

El peticionario recurrente era, para la fecha del accidente por el cual solicita compensación, un policía que prestaba servicios en la ciudad de Mayagüez.

En la petición de revisión radicada ante esta Corte Suprema, el recurrente alega que en momentos en que él se encontraba en el desempeño de su empleo y realizaba funciones inherentes al mismo, corriendo tras unos individuos que alteraban la paz, sufrió una caída "dando en el suelo con sus posaderas como si lo hubieran sentado violentamente sobre la tierra y alojándosele en el ojo izquierdo un cuerpo extraño como lodo, polvo o tierra, dada su irritación". Continúa alegando que en el informe patronal rendido de acuerdo con lo prescrito por la Ley de Compensaciones por Accidentes del Trabajo, no se mencionó la caída, que aparentemente no había tenido consecuencias perceptibles, y que él, como profano, ignoraba que en alguna forma pudiera repercutir en el ojo. Que sometido a tratamiento y examen por el médico del Fondo del Seguro del Estado se encontró que el recurrente había sufrido un desprendimiento de la retina del ojo izquierdo, perdiendo la visión por ese órgano.

El Fondo del Seguro del Estado, basándose en el informe médico del Dr. Cuello, oculista que había examinado al recurrente, decidió el caso declarando que el desprendimiento de la retina no había sido causado por accidente alguno del trabajo. De dicha decisión apeló el recurrente para ante la Comisión Industrial, la cual, después de oír a ambas partes, dictó resolución de fecha 15 de julio de 1943, sosteniendo la decisión del Fondo del Seguro del Estado. Solicitada la reconsideración de dicha resolución por el recurrente, la Comisión la declaró sin lugar por resolución de 6 de agosto de 1943. El lesionado entonces interpuso el presente recurso solicitando la revisión de la resolución de la Comisión y basando su petición en la comisión de diez errores que señala

en su alegato. Los discutiremos conjuntamente por estar todos ellos relacionados con la apreciación de la evidencia.

 La única cuestión envuelta en este caso es si la Comisión Industrial erró en la apreciación de la prueba, que era de carácter pericial. No surge del caso conflicto alguno de prueba. Los hechos, en síntesis, son los siguientes:

El policía insular Angel Samuel Bonilla prestaba servicios en la "demarcación Buena Vista" en la ciudad de Mayagüez, en la noche del 16 de diciembre de 1939. Entre diez y once de la noche y mientras bajaba "con el policía Norberto Toro persiguiendo a unos serenateros" como había llovido resbaló y se cayó ensuciándose la ropa y teniendo que ir a su casa a cambiarse. Después de regresar a continuar prestando servicio y unas dos horas después del accidente, empezó a sentir una irritación fuerte en el ojo izquierdo sintiendo que le ardía y le dolía el "pómulo del ojo" (sic), lo que atribuyó a que le había caído "posiblemente polvo de la calle". Esa noche como a las dos, y en vista de que continuaba la irritación del ojo, regresó al cuartel e informó su estado, siendo relevado de continuar prestando servicios esa noche. Más tarde fué donde el Dr. Perea, de Mayagüez, quien después de examinarlo lo envió a Ponce donde el Dr. Leovigildo Cuello, oculista. Al ser examinado por este último, quien le preguntó si había sufrido algún accidente o traumatismo de índole alguna o algún golpe en el ojo, el lesionado contestó que no. No habiendo encontrado el Dr. Cuello cuerpo extraño alguno en el ojo ni irritación ni inflamación, diagnosticó "desprendimiento de la retina del ojo izquierdo".

El Fondo del Seguro del Estado, basándose en el diagnóstico del oculista, dictó una decisión el 2 de enero de 1940 denegando la compensación por no resultar la lesión sufrida por el policía Bonilla ninguna de las que compensa la Ley Núm. 45 de 18 de abril de 1935 ((1) pág. 251) como enfermedades ocupacionales, así como tampoco se debió a acci-

dente alguno del trabajo, ya que no existía relación causal entre el accidente alegado (caída de un cuerpo extraño en el ojo) y el desprendimiento de la retina.

En su escrito de apelación para ante la Comisión Industrial, el recurrente describió el accidente en la forma siguiente:

"Estando de servicio en la demarcación 'Buena Vista' de Mayagüez, P. R., de noche,. a las 2:00 a.m. sentí una gran irritación en el ojo y no podía ver claramente, lo que se debió posiblemente a que le cayó polvo de la calle". Hacía constar, además, que: "Actualmente estoy siendo atendido por los Dres. Fernández, de San Juan, P. R." y añadía no estar conforme con la decisión del Administrador del Fondo del Seguro del Estado: "Porque creo que el estado de mi ojo izquierdo tiene relación de causa y efecto con el trabajo que realizaba a la hora indicada, sobre lo cual declararé en la vista pública, por lo que debe proveerse tratamiento y compensación."

Ni en el informe del patrono, ni en el escrito de apelación para ante la Comisión Industrial que hiciera el policía Bonilla se mencionó en ningún momento que él hubiese sufrido una caída al perseguir a unas personas que estaban dando serenatas. No fué hasta la celebración de la vista pública ante el Presidente de la Comisión Industrial, Sr. Manuel León Parra, el día 26 de marzo de 1941, que por primera vez el abogado del reclamante alegó que el desprendimiento de la retina se debió a un accidente que sufriera Bonilla antes de sentir malestar en el ojo izquierdo.

Durante la vista declararon los Dres. Leovigildo Cuello y M. A. Mariani, el primero como perito médico del Fondo del Seguro del Estado y el segundo de la Comisión Industrial.

La declaración del Dr. Cuello puede resumirse así:

El 20 de diciembre de 1939 le fué referido el caso del señor Bonilla por el Dr. Perea, de Mayagüez, como habiendo sufrido "un accidente del ojo izquierdo" el día 16 de di-

ciembre del mismo año; que lo vió el 20 de diciembre; que lo ingresó en el Hospital de Damas posponiéndolo para nuevo examen, y dejándolo en observación hasta el día 21 de diciembre. Que Bonilla le presentó el informe patronal y que la declaración que le hizo fué que estando de servicio en un barrio determinado de Mayagüez sintió un dolor y una gran irritación en el ojo izquierdo que atribuía a que le había caído arena en el ojo. Que lo examinó y no constató cuerpo extraño ni signo alguno de irritación en el ojo, pero que al examinarle el fondo del ojo constató un desprendimiento de la retina sin otras lesiones del ojo.

Explicó también el Dr. Cuello que el desprendimiento de la retina tiene dos causas:

1. El desprendimiento secundario que es causado por un estado patológico anterior del ojo cual un tumor de la coroide o una lesión de la cabeza, y que también la miopía puede causar el desprendimiento de la retina. Además en personas de edad avanzada, debido a "cierto estado patológico que se forma entre (sic) el ojo" puede producirse el desprendimiento de la retina, así como también la pueden causar lesiones de la misma retina y la tuberculosis, la sífilis y cualquier otra infección o afección.

2. Desprendimiento idiopático o primitivo de la retina o sea que la retina se desprende sin causa alguna o lesiones patológicas constatables anteriores o posteriores al desprendimiento.

Siguió declarando que fuera de esas dos causas se ha notado que el desprendimiento de la retina puede ocasionarse por traumatismo directo sobre el ojo "y se ha invocado y tanto se ha exagerado en la causa" que se ha llegado a decir que el desprendimiento de la retina puede ser ocasionado por un movimiento brusco de la cabeza o un golpe sobre el cráneo. Añadió el Dr. Cuello que teniendo en cuenta que su deber era dar un diagnóstico exacto, sin interés personal, interrogó a Bonilla minuciosamente; que le dijo al paciente

que no tenía cuerpo extraño en el ojo, ni tenía irritación y que "es bueno que se sepa que el desprendimiento de la retina no da dolor en el ojo ni irrita el ojo"; que el enfermo se da cuenta del desprendimiento de la retina por trastornos visuales, y por eso "consignó" (sic) su informe negando la relación de causa y efecto ya que el reclamante no presentaba traumatismo reciente del ojo izquierdo, ni acusaba fenómenos dolorosos ni irritativos de ninguna especie; que el ojo presentaba una apariencia normal; que la práctica le ha demostrado que en casos como el del reclamante había que buscar la causa en la retina, de acuerdo con el trastorno ocular que el reclamante le relataba; que lo había interrogado minuciosamente en cuanto a si no había recibido ningún golpe en el ojo ni traumatismo de alguna especie, y al decirle el obrero que no, que a lo único que él achacaba el "quebranto" del ojo era a que le cayó tierra en el mismo, ante esas condiciones y sin haber constatado una lesión anterior en el ojo ni signos externos de traumatismo, diagnosticó desprendimiento de la retina. "Que desde el momento en que no aceptó la relación de causa y efecto entendía que era un desprendimiento idiopático, desprendimiento espontáneo de la retina, y no de origen traumático". Declaró, además, el Dr. Cuello, que no conoce de ningún caso de desprendimiento de retina provocado por una caída en que la persona caiga sentada de sus propios pies y que lo que priva en el ánimo del oculista al determinar el desprendimiento de la retina, es sobre todo el traumatismo directo.

Repreguntado el oculista Dr. Cuello si un traumatismo indirecto puede ocasionar un desprendimiento de la retina, contestó que "no conocía casos ni personalmente ni recuerda haberlos leído; que no ha visto en la literatura ni ha visto un caso de desprendimiento de la retina al caer una persona de sus pies sentada".

El Dr. M. A. Mariani, oculista y asesor de la Comisión Industrial a quien ésta asignó para que practicase un examen

del policía reclamante y rindiese un informe, declaró en vista pública celebrada el día 25 de febrero de 1943 ante el Comisionado Asociado Sr. Francisco Paz Granela, lo siguiente:

Que después de examinar a Bonilla llegó a la conclusión de que éste sufría de un desprendimiento de la retina el cual no pudo ver por el hecho de que el ojo había sido sometido a intervención quirúrgica y los medios transparentes del ojo estaban opacos lo cual le impedía ver el fondo del ojo. Pero que, sin embargo, por la historia y la información que le suministró la Comisión así como por la que le suministró el paciente llegó a la conclusión de que éste padecía del desprendimiento de la retina. Que el paciente había perdido la visión por ese ojo y presentaba signos de estar sufriendo de una inflamación de las membranas interiores del ojo. Declaró, además, que el hecho de una persona caer de espalda de sus propios pies no puede producir el desprendimiento de la retina a menos que no existan causas predisponentes en ese individuo; que el 99½ por ciento de las probabilidades es que una caída de esa naturaleza no produzca un desprendimiento de la retina en personas normales, "que no tengan las causas que predisponen al desprendimiento de la retina; que una caída de esa naturaleza, por su experiencia, y por la experiencia de otros y por las estadísticas que preparan otros autores no causa el desprendimiento de la retina."

Con esa prueba ante sí, la Comisión llegó a las conclusiones siguientes al dictar su resolución de 15 de julio de 1943:

"No estamos convencidos de que al policía Angel Samuel Bonilla le cayera polvo de la calle en el ojo izquierdo mientras prestaba servicios y de que esto fuese la causa del desprendimiento de la retina, por cuanto que, de acuerdo con el propio Angel Samuel Bonilla y su otro compañero policía, el 16 de diciembre de 1939 por la noche había llovido en el sitio donde ellos estaban prestando servicios, y no había polvo en la calle, y sí lodo y, además, porque al ser examinado por el oculista Dr. Cuello, de Ponce, éste no encontró en el ojo izquierdo de Angel Samuel Bonilla cuerpo extraño de ninguna clase, ni presentaba irritación ni inflamación de su ojo. Al enmendar

el reclamante . . . su alegación de que sufrió un accidente al caer, al suelo de espaldas cuando trataba corriendo de perseguir a unas personas que estaban dando serenatas a altas horas de la noche, produce, a nuestro juicio, una contradicción, por cuanto que, si él salió corriendo para perseguir a los que estaban dando serenatas . . . . es razonable pensar que el policía en vez de caer sentado o de espalda, hubiese caído hacia adelante y se hubiese lesionado o lacerado su rostro o sus manos, y nada de esto presentaba el policía cuando fué examinado por el especialista . . . si aceptamos que al tratar de correr· el policía cayera de sus propios pies, sentado, no es éste un traumatismo que pueda producir el desprendimiento de la retina como sostienen los peritos médicos, por cuanto que fué una caída tan leve que inmediatamente se levantó, se trasladó a su hogar, se cambió de ropa y retornó al servicio. Fué después de todo esto que el mismo policía describe que empezó a sentir, según él, dolor en el ojo izquierdo e irritación. Más, el especialista no encontró irritación ni inflamación en el ojo izquierdo.

Los peritos médicos doctores Leovigildo Cuello y M. A. Mariani, especialistas en enfermedades de la vista, no encontraron causa alguna del desprendimiento de la retina del ojo izquierdo del policía que pudieran relacionarla ni con la primera versión del accidente que consistió en que posiblemente le cayó polvo de la calle en el ojo izquierdo, ni con la segunda versión invocada mucho después relacionada con una caída de espalda.''

Es evidente que con la prueba que tuvo ante sí, la Comisión Industrial no pudo dictar resolución concediendo compensación al recurrente. Las declaraciones de los peritos médicos no favorecen en absoluto al recurrente, pues tanto el perito del Fondo como el del propio recurrente negaron toda relación de causa y efecto entre el accidente sufrido por el recurrente y la lesión por la cual éste reclama compensación.

El reclamante tuvo oportunidad de presentar el testimonio del Dr. Fernández quien lo atendió y tuvo bajo tratamiento y no lo hizo. Tal vez dicho médico hubiese podido establecer la relación de causa y efecto entre el accidente y la lesión pero no habiendo el recurrente presentado prueba a tal efecto,

no creemos haya establecido su derecho a la compensación que reclama.

*Debe declararse sin lugar la petición de revisión.*