Robin Laverne FERGUSON and Glenda Joan Ferguson, Claimants-Appellants,

v.

TWIN HILLS GOLF AND COUNTRY CLUB, INC., and Aetna Casualty and Surety Company, Respondents.

No. 13463.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 27, 1984.

Motion for Rehearing or to Transfer to Supreme Court Denied
Sept. 12, 1984.

Application to Transfer Denied
Nov. 20, 1984.

Allan C. Wilcox, Thomas Mann, Joplin, for claimants-appellants.

Daniel E. Scott, Bruce A. Copeland, Spencer, Scott & Dwyer, P.C., Joplin, for respondents.

GREENE, Judge.

Claimants, Robin Laverne Ferguson and Glenda Joan Ferguson, appeal a final award by the Labor and Industrial Relations Commission (commission) denying workers' compensation benefits. for the death of their grandfather, Truman LeRoy Ferguson.

The sole issue is whether Truman's death arose out of and in the course of his employment with the Twin Hills Golf and Country Club located in Jasper County, Missouri.

We view the record in the light most favorable to the commission, whose findings are conclusive if supported by competent and substantial evidence. *Taliaferro v. Barnes Hospital,* 586 S.W.2d 429, 431 (Mo.App.1979).

There is competent and substantial evidence in the record to show that Truman Ferguson was employed as a weekend night watchman at the country club. He worked from 10 P.M. until 6 A.M. on Saturday and Sunday nights. The country club is located southeast of the intersection of

20th Street and Black Cat Road in Jasper County. Truman lived west of Twin Hills in Galena, Kansas. To get to work, he drove his 1956 Ford east on 20th Street from Galena to Twin Hills.

At about 10 P.M. on the evening of October 3, 1981, two men who were John Johnson and Randall Ruark, were riding around in Johnson's pickup truck. Johnson was driving and Ruark was a passenger. The two men had been drinking whiskey and were "drunk and ornery." As Johnson's pickup exited a dirt road and entered West 20th Street, at a point about two miles west of the intersection of 20th Street and Black Cat Road, Johnson narrowly missed being involved in a collision with an old blue Ford going east on 20th Street. After the near miss, both vehicles travelled east on 20th Street with the Ford in front. Johnson and Ruark were angry because of the near collision. Johnson would speed up until his front bumper would almost touch the rear bumper of the Ford and would try to pass the Ford. When this happened, the Ford would veer to the center of the road, preventing a pass. This went on for two miles until they got to the intersection of 20th Street and Black Cat Road. The Ford veered slightly to the south and Johnson started to pass the Ford. At this point, Ruark pointed a loaded .44 caliber pistol owned by Johnson in the general direction of the Ford and fired one shot. The pickup truck then continued on 20th Street.

Neither Johnson nor Ruark was aware that the shot had struck Ferguson. The next morning, Ferguson was found in his automobile. There was a hole in the driver's door window. He had a gunshot wound to the head, and there was a lot of blood in the car. The Ford was located on a paved portion of the intersection across the street from the entrance to the country club. The car's headlights and ignition key were on and the car was in gear but the engine was not running. Ferguson died from his gunshot wound on October 17.

Ruark was charged with manslaughter for killing Ferguson. He pled guilty and was sentenced to 10 years' imprisonment.

Based on these uncontroverted facts, the referee, now administrative law judge, for the commission ruled that Ferguson met his death by reason of an assault that occurred in the course of a private quarrel that was personal to Ferguson, Johnson and Ruark, and, therefore, did not arise out of Ferguson's employment. For that reason, he denied the claim of Robin and Glenda for death benefits. The commission, on application for review, affirmed the findings and award of the administrative law judge.

The parties agree that this is an assault case. Missouri courts recognize three types of assault that affect employers' liability in workers' compensation claims. These classification are 1) assaults invited by the employee's dangerous duties or environment, or directly attributable in some way to the risks in the worker's employment, 2) assaults committed in the course of private quarrels that are purely personal to the participants, and 3) irrational unexplained assaults of so-called "neutral" origin, which cannot rationally be attributed to employment. *Person v. Scullin Steel Company*, 523 S.W.2d 801, 803–804 (Mo. banc 1975).

There is no evidence in this case that the assault in question occurred as a result of Ferguson's duties, or his environment, while performing his duties as a night watchman, or that it was directly attributable in some way to the risks of Ferguson's employment, so that classification is eliminated from our consideration of the problem.

While the administrative law judge ruled that Ferguson's death was caused by an assault which occurred in the course of a private quarrel between Ferguson, Johnson and Ruark, which ruling was adopted by the commission, we do not believe that there is a factual basis for such declaration of law. Accepting everything Johnson testified to as true, there is nothing in his testimony to indicate that Ferguson was involved in a "private quarrel" with Johnson and Ruark. To the contrary, the evidence shows that the shooting of Ferguson

was an irrational and unexplained act that was unprovoked by Ferguson. The precise testimony on the issue was as follows:

"Q. Then can you tell the Court what happened as you approached the intersection of Twentieth and Black Cat Road?

A. Okay, yeah, I was going, from there, I guess the car in front of us veered off to the south and I thought, 'My perfect chance; I'll go around him and get out of this junk.' I went around and about half way through the intersection Randy popped off the shot.

Q. When you say Randy popped off the shot, who's Randy?

A. Mr. Ruark.

Q. When you say popped off the shot, you mean he shot the gun?

A. Right.

. . . .

Q. Were you in—this incident you referred to happened in a split second, did it not?

A. The shot?

Q. The pop?

A. Oh, yeah, it was so fast.

Q. You just heard the pop; you didn't see Randall take the gun and aim?

A. Out of the corner of my eye I happened to catch he was sticking his arm out the window.

Q. You didn't know whether he had a whiskey bottle or gun, did you?

A. It's kind of obvious. It's not a small weapon. Yes, I was aware.

Q. As you entered the intersection?

A. Right.

Q. And you heard the pop?

A. Right.

Q. And before that time Randall hadn't told you he was going to shoot anything?

A. Yes, he had.

Q. What did he say?

A. It was about half way between where we encountered the other vehicle and Black Cat he pulled the gun out of the glovebox [sic] and said something about, 'Care if I pop it out the window?' Hell, we were out in the country. I was aware he had a gun, yes.

Q. Okay, and his purpose of having the gun and drinking whiskey and shooting at random, he shot at road signs that night or other objects with that gun?

A. I believe he fired the gun. I really hate to give testimony either way. It has been well over a year. I don't have total recall on it.

Q. You didn't know the person in the Ford automobile?

A. Neither one of us had any idea.

Q. Correct and you were ornery and Randy was drunk and ornery that night, too, he was drinking?

A. Fair assessment.

Q. What?

A. Yes."

■ What we have here is an assault of neutral origin (the third classification) which, if it had happened in the course of Ferguson's employment, would have made the injury and death compensable, as was the case in *Allen v. Dorothy's Laundry and Dry Cleaning Co.*, 523 S.W.2d 874 (Mo.App.1975). However, the injury to Ferguson, which resulted in his death, did not occur while he was in the course of his employment, but happened while he was on his way to work.

Accidents and injuries sustained during travel to work, with certain exceptions such as the extended premises doctrine [*Hunt v. Allis-Chalmers Manufacturing Company*, 445 S.W.2d 400, 405–407 (Mo.App.1969)], or the dual purpose doctrine [*Snowden v. Orscheln Brothers Truck Lines*, 446 S.W.2d 494, 496–497 (Mo.App.1969)], which are not applicable here under the facts, are not compensable as they did not arise out of, or in the course of, employment. § 287.120.-1;[1] *Delozier v. Munlake Const. Co.*, 657 S.W.2d 53, 55 (Mo.App.1983).

■ This being so, the award of denial of death benefits to the claimants was correct under the facts, even though the declaration of law that the denial was based on the

---

**1.** RSMo 1978, V.A.M.S.

proposition that Ferguson died as the result of an assault committed in the course of a private quarrel is not supported by the record.

We are not bound by an erroneous declaration of law by the administrative body, but reach our own determination as to whether the correct result was reached. *Mo. Division of Emp. Sec. v. Labor and Industrial Rel.*, 637 S.W.2d 315, 317 (Mo. App.1982). We hold that Ferguson's injuries, which resulted in his death, were the result of an irrational assault of neutral origin that did not arise out of, or occur in, the course of Ferguson's employment. This being so, the final award of the commission denying death benefits was correct.

Award affirmed.

TITUS, P.J., concurs.

FLANIGAN, J., files opinion concurring in result.

FLANIGAN, Judge, concurring in result.

I concur in the result. I agree that Ferguson's death happened while he was on his way to work and did not occur in the course of his employment. In my opinion, however, the finding of the Commission that the assault occurred in the course of a private quarrel was supported by the evidence. It is true that the private quarrel arose spontaneously by reason of the movements of the vehicles and was of short duration. It is also true that the quarrelers were strangers to each other. In my view the assault was committed in the course of a private quarrel which was purely personal to the participants.