JORGE ORTIZ PÉREZ, demandante y recurrido, *v.* FONDO DEL SEGURO DEL ESTADO, demandado, y COMISIÓN INDUSTRIAL, recurrida.

*Número:* CE-93-471          *Resuelto:* 31 de octubre de 1994

368

*Andrés Cruz González*, abogado de la parte recurrente; *Peter Serrano Ortiz*, abogado de la parte recurrida.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

La parte recurrente solicita que revisemos una sentencia del Tribunal Superior, Sala de San Juan, que revocó una Resolución de la Comisión Industrial de 15 de junio de 1992.([1]) Dicha resolución declaró compensable el accidente sufrido por el obrero recurrente Jorge Ortiz Pérez, en virtud de la Ley Núm. 45 de 18 de mayo de 1935, Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 1 *et seq.* Tomamos como ciertas las conclusiones de hecho que hiciera la Comisión Industrial y procedemos a revisar.([2])

---

([1]) La sentencia recurrida fue ratificada mediante resolución del extinto Tribunal de Apelaciones de Puerto Rico, Sección Sur, la cual denegó el recurso de *certiorari* presentado por el obrero peticionario. Posteriormente, dicho tribunal acogió una moción de reconsideración y expidió el auto.

([2]) La Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935 (11 L.P.R.A. sec. 1 *et seq.*), estipula que la revisión de las resoluciones de la Comisión Industrial se limitará a cuestiones de derecho o a la apreciación de la

I

*Los hechos*

El 13 de noviembre de 1984, el Sr. Jorge Ortiz Pérez, conserje en la Autoridad de Acueductos y Alcantarillados (en adelante la Autoridad) fue agredido por el Sr. Manuel Huertas Reyes, también empleado de dicha corporación pública.[3] El incidente ocurrió *mientras el recurrente se desempeñaba en las labores propias de su empleo.*

El Fondo del Seguro del Estado (en adelante F.S.E.) determinó que, como resultado de la agresión, el señor Ortiz Pérez sufrió una fractura en el tabique nasal y se afectó emocionalmente. Sin embargo, concluyó que el accidente sufrido por el obrero recurrente no era compensable a la luz del Art. 2 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 2, ya que éste no provino de un acto o función inherente al empleo ni ocurrió en el curso ni como consecuencia de éste.

La Comisión Industrial revocó la decisión del Administrador del F.S.E. y le ordenó que brindara al obrero lesionado la protección y los beneficios de dicha ley. Concluyó que el obrero lesionado no provocó ni inició la agresión. Por otra parte, señaló que el señor Huertas Reyes, con anterioridad al accidente surgido con el obrero recurrente, había tenido otros incidentes de violencia con compañeros de trabajo.[4] Como señalamos anteriormente, el Tribunal Su-

---

prueba cuando ésta sea de carácter pericial. *Cardona Velázquez v. Comisión Industrial*, 90 D.P.R. 257, 266 (1964); *Gallart, Admor. v. Comisión Industrial*, 89 D.P.R. 581, 589 (1963); *Montaner, Admor. v. Comisión Industrial*, 54 D.P.R. 722, 725 (1939). Si las conclusiones de hecho de la Comisión no son arbitrarias ni huérfanas de evidencia legal y competente, no podemos alterarlas, a pesar de que nosotros hubiéramos llegado a distintas conclusiones. La Comisión es el foro encargado de apreciar y pasar prueba y juzgar la credibilidad de los testigos. *Montaner, Admor. v. Comisión Industrial*, supra, págs. 727 y 785. Véanse, además: *Díaz Ortiz v. F.S.E.*, 126 D.P.R. 32 (1990); *González Santiago v. F.S.E.*, 118 D.P.R. 11, 17 (1986).

[3] El señor Huertas Reyes fue declarado culpable por el delito de agresión simple. Contra el recurrente no se impuso denuncia, acusación o sanción alguna.

[4] El señor Huertas Reyes, con posterioridad al incidente de agresión, fue despedido y separado de la Autoridad de Acueductos y Alcantarillados por actos de

perior revocó la resolución de la Comisión Industrial, decisión que fue confirmada por el desaparecido Tribunal de Apelaciones de Puerto Rico.

Inconforme, el obrero recurrente alega que el tribunal de instancia erró al no declarar que el accidente sufrido es compensable por la Ley de Compensaciones por Accidentes del Trabajo. Aduce, además, que su empleo lo expuso a la posibilidad de ser lesionado; la agresión estaba relacionada con el empleo; lo ocurrido fue una agresión unilateral e inesperada, y que, por lo tanto, se le debe ofrecer compensación en virtud de la doctrina de una agresión súbita, inesperada e inexplicable (*unexplained assaults*). Veamos.

## II

*Sobre la Ley de Compensaciones por Accidentes del Trabajo*

■ La Ley de Compensaciones por Accidentes del Trabajo establece un sistema de seguro compulsorio y exclusivo para compensar a los obreros y empleados que sufran lesiones, se inutilicen o mueran como consecuencia de accidentes ocurridos en sus trabajos. *Montaner v. Comisión Industrial*, 59 D.P.R. 396, 399 (1941).

■ El fin de esta legislación social es promover el bienestar de los trabajadores, establecer el deber de los patronos de compensar a sus empleados o los beneficiarios de éstos, y establecer el sistema de seguros y el método para proceder con las reclamaciones. Exposición de Motivos de la Ley de Compensaciones por Accidentes del Trabajo, *supra*; 1935 Leyes de Puerto Rico 25.

■ La protección que ofrece el Art. 2 de la Ley de Compensaciones por Accidentes del Trabajo, *supra*, se extiende a las lesiones sufridas como consecuencia de accidentes que provengan de cualquier acto o función inhe-

---

sabotaje contra el patrono.

rente al trabajo de un empleado u obrero, que ocurran en el curso de dicho trabajo o como consecuencia de éste. *Pacheco Pietri y otros v. E.L.A. y otros*, 133 D.P.R. 907 (1993); *Díaz Ortiz v. F.S.E.*, 126 D.P.R. 32 (1990); *Cardona Velázquez v. Comisión Industrial*, 90 D.P.R. 257, 264 (1964). Lo que se requiere es un nexo o relación causal entre la lesión o enfermedad del obrero y su trabajo. *Pacheco Pietri y otros v. E.L.A. y otros*, supra. Si falta uno (1) de los tres (3) requisitos dispuestos por la ley, el accidente sufrido por el obrero o empleado no será compensable. *Díaz Ortiz v. F.S.E.*, supra, pág. 38; *Montaner, Admor. v. Comisión Industrial*, 53 D.P.R. 197, 200 (1938). Corresponde a la parte que solicita la compensación demostrar que el accidente sufrido está cobijado bajo la Ley de Compensaciones por Accidentes del Trabajo. *Rodríguez v. Comisión Industrial*, 99 D.P.R. 121, 123 (1970); *Vélez v. Comisión Industrial*, 79 D.P.R. 282, 285 (1956); *Sucn. Portela v. Comisión Industrial*, 63 D.P.R. 157, 161 (1944); *Bonilla v. Comisión Industrial*, 63 D.P.R. 589, 591 (1944); *Ruiz v. Comisión Industrial*, 60 D.P.R. 228, 232–233 (1942).

Siendo la Ley de Compensaciones por Accidentes del Trabajo un estatuto con fines remediales, sus disposiciones deben ser interpretadas liberalmente. *Morales v. Adm. Sistemas de Retiro*, 123 D.P.R. 589, 595 (1989); *Sánchez v. A.S.R.E.G.J.*, 116 D.P.R. 372, 378 (1985); *Bruno Colón v. Comisión Industrial*, 109 D.P.R. 785, 787 (1980). Tal interpretación debe permitir que se le otorgue compensación al mayor número de reclamaciones de empleados accidentados. *Muñoz Hernández v. Policía de P.R.*, 134 D.P.R. 486 (1993). Ahora bien, el F.S.E. no es un asegurador absoluto de todo accidente sufrido por un obrero. *Admor., F.S.E. v. Comisión Industrial*, 101 D.P.R. 56, 58 (1973). El principio de liberalidad que permea la interpretación de la Ley de Compensaciones por Accidentes del Trabajo debe ser aplicado únicamente cuando exista duda sobre la relación causal entre las lesiones del obrero y las

funciones de su trabajo. *Cabán Méndez v. F.S.E.*, 115 D.P.R. 1, 3 (1983). Esto es, cualquier duda razonable sobre la aplicación de la ley, respecto a la relación causal entre el trabajo o la ocupación del obrero y la lesión, incapacidad o muerte del empleado reclamante, deberá resolverse a favor de éste. *Agosto Serrano v. F.S.E.*, 132 D.P.R. 866 (1993); *Alonso García v. Comisión Industrial*, 102 D.P.R. 733, 735–736 (1974); *Cardona v. Comisión Industrial*, supra, págs. 264–265.

## III

*Sobre la compensabilidad de lesiones que son producto de agresiones de terceros*

■ Hasta 1962, el Art. 4 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 5, incluía un inciso que negaba los beneficios de la compensación al obrero que sufriera una lesión, se inutilizara o muriera a consecuencia de un acto criminal de una tercera persona.[5] Al recomendar la aprobación de la eliminación de dicho inciso, la Comisión del Trabajo de la Cámara de Representantes expresó que la enmienda serviría para atemperar la ley local con las tendencias modernas en el ámbito de la compensación por accidentes laborales que liberalizaban las restricciones en cuanto a lo que constituye un accidente del trabajo.[6]

Para fundamentar su posición respecto a la propuesta enmienda, la Comisión del Trabajo de la Cámara de Repre-

---

[5] El inciso (3) del Art. 4 de dicha ley fue eliminado por la Ley Núm. 7 de 7 de mayo de 1962 (11 L.P.R.A. sec. 5).

El Art. 4 de la Ley de Compensaciones por Accidentes del Trabajo, *supra*, excluye del ámbito de la protección ofrecida por el estatuto los accidentes ocurridos cuando el empleado lesionado trató de cometer un delito o lesionar a su patrono u otra persona, o cuando voluntariamente se causara la lesión, cuando el accidente sufrido haya sido causado por el estado de embriaguez de un obrero o cuando la imprudencia temeraria del empleado haya sido la única causa de la lesión.

[6] Informe de la Comisión del Trabajo de la Cámara de Representantes sobre el P. de la C. 428, XV (Núm. 3) Diario de Sesiones de la Asamblea Legislativa, 7 mayo de 1962.

sentantes acogió nuestros planteamientos en el caso de *Atiles, Admor. v. Com. Industrial y Sucn. Álvarez*, 73 D.P.R. 15, 21 (1952). En dicho caso expresamos:

> El inciso 3 del Artículo 4, supra, es peculiar de nuestro estatuto ya que, del examen que hemos hecho de las distintas leyes sobre compensaciones por accidentes del trabajo en los distintos estados de la Unión Americana, recopiladas en Schneider, *Workmen's Compensation Statutes,* ninguna contiene una disposición similar. Es por esta circunstancia que la jurisprudencia sobre casos de ataques al obrero por terceras personas se ha ido liberalizando cada día más reconociendo la compensabilidad de la lesión sufrida no solo cuando el obrero ha sido una víctima inocente, sino aun cuando ha sido el agresor inicial y la prueba demuestra que su empleo, en alguna forma, lo expuso al riesgo de recibir la lesión. *Assaults and Horseplay Under Workmen's Compensation Laws,* por Samuel B. Horovitz, 41 IIL. L. Rev. 311; *Modern Trends in Workmen's Compensation,* por el mismo autor, 21 Indiana L.J. 473; 6 Schneider's Workmen's Compensation Law 188; 4 NACCA Law Journal 47–54; 7 Id. Id. 58–60; 8 Id. Id. 58–60. (Escolio omitido y énfasis suplido.)

También señalamos en *Atiles, Admor. v. Com. Industrial y Sucn. Álvarez,* supra, pág. 23:

> Bajo la tendencia moderna liberalizadora en la concepción de lo que constituye un accidente del trabajo *poco importa que una lesión sea consecuencia de una agresión entre dos obreros del mismo patrono si, al momento de ocurrir, ambos están realizando la labor que el patrono les ha encomendado y la agresión surge con motivo de dicha labor.* (Énfasis suplido.)

■ En resumen, la Ley de Compensaciones por Accidentes del Trabajo fue enmendada para proveer los beneficios de tan importante legislación social en aquellos casos en que un obrero sea agredido intencional e ilegalmente por un tercero, como muy bien podría ser un compañero de trabajo. Basta demostrar una relación causal entre el trabajo o la ocupación del obrero y su lesión, incapacidad o muerte. *Cardona Velázquez v. Comisión Industrial,* supra, pág. 264. Véase, además, 1 *Larson's Workmen's Compensation Law* Sec. 11.11(b) (1989).

■ Ahora bien, como señaláramos en *Rodríguez v. Comisión Industrial*, supra, pág. 122, "el accidente no es compensable a menos que *por la naturaleza y características del empleo se exponga al obrero a la posibilidad de ser lesionado, o, que la agresión esté en alguna forma relacionada con el empleo*". (Énfasis suplido.) Véase, también, *Atiles, Admor. v. Com. Industrial y Sucn. Álvarez*, supra.

Sobre la compensabilidad de las lesiones surgidas por una agresión de un tercero, el profesor Larson explica que éstas serán compensables si se demuestra que el motivo de la agresión tiene relación con las funciones que desempeña el obrero lesionado en su trabajo.[7] Añade que aún si el objeto de la riña o agresión no tiene relación con el empleo, las lesiones sufridas serán compensables si se demuestra que el ambiente de trabajo de los que participaron en la pelea era uno de hostilidad o de tensión, lo que propició una situación que culminó en el enfrentamiento físico. *Larson's*, supra, Sec. 11.16(a).[8] Claro está, si el patrono demuestra que la animosidad o conflicto que motivó la agresión es producto de asuntos puramente privados y personales, y que el ambiente de trabajo no contribuyó en nada al episodio de agresión, las lesiones del empleado no serán compensables. *Larson's*, supra, Sec. 11.21(c).

Sin embargo, si la hostilidad y la tensión que provocó la riña no es producto de los deberes o funciones de los empleados sino, más bien, porque los empleados, una vez se conocieron en el trabajo, desarrollaron una relación privada —igual que lo hubiesen hecho si se hubiesen conocido en otro lugar— y si en el curso de esa relación surgió una

---

[7] Cierto tipo de trabajos, por la naturaleza de las funciones que conllevan, exponen al empleado, de manera evidente, al riesgo de ser objeto de una agresión. Por ejemplo, empleos en el área de seguridad y protección de propiedad; aquellos que involucran cuestiones de transacciones de dinero, y los que exponen al empleado a situaciones difíciles con el público, a horarios nocturnos de trabajo o viajes por localidades peligrosas.

[8] Véase al respecto *Hartford Accident & Indemnity Co. v. Cardillo*, 112 F.2d 11 (D.C. App. 1940).

disputa, a ésta se le daría igual trato que a una pelea doméstica traída al trabajo. *Larson's*, supra, Sec. 11.222.[9]

En el pasado hemos aplicado las doctrinas esbozadas a la luz de nuestra Ley de Compensaciones por Accidentes del Trabajo en casos en que, como el de autos, un obrero resulta lesionado o muerto por ser agredido por un compañero de trabajo.

En *Caraballo v. Fondo del Seguro del Estado*, 53 D.P.R. 195 (1938), el obrero reclamante, quien trabajaba en el corte de caña, recibió una herida de machete. Su agresor era un compañero de trabajo encargado de servirle agua a los peones. Al negarle la compensación solicitada, señalamos que la lesión había sido producto de una cuestión personal provocada por él y que, por lo tanto, no era producto de un acto o función inherente a su empleo. Sin embargo, años más tarde, en *Atiles, Admor. v. Com. Industrial y Sucn. Álvarez*, supra, nos dimos cuenta de que nuestra decisión no estaba a tono con el espíritu remedial y social de nuestra Ley de Compensaciones por Accidentes del Trabajo, y revocamos este caso. Precisamente, en dicho caso acogimos el criterio de que *las lesiones recibidas como consecuencia de una agresión son compensables cuando la agresión surge del trabajo o con motivo de éste. Atiles, Admor. v. Com. Industrial y Sucn. Álvarez*, supra, pág. 23.

En *Cardona Velázquez v. Comisión Industrial*, supra, durante horas laborables y en los predios de sus trabajos, dos (2) empleados se enfrascaron en una pelea, resultando ambos lesionados. Al denegar la compensación a uno (1) de los obreros lesionados, insistimos en que *las lesiones compensables surgidas de las condiciones del empleo pueden incluir lesiones provenientes de una pelea en la cual el em-*

---

[9] Véanse: *Carr v. City of Norfolk*, 422 S.E.2d 417 (1992); *Brimhall v. Home Ins. Co.*, 694 S.W.2d 931 (1985); *City of Richmond v. Baxton*, 335 S.E.2d 259 (1985); *Gaines v. Monsanto, Co.*, 655 S.W.2d 568 (1983); *Ward v. General Motors Corp.*, 431 A.2d 1277 (1981); *Boone v. Workmen's Comp. Appeal Bd.*, 402 A.2d 569 (1979); *Malco, Inc. v. Industrial Commion*, 358 N.E.2d 1133 (1976); *Daggs v. Garrison Furniture Company*, 464 S.W.2d 593 (1971); *Cyrus v. Miller Tire Service*, 38 S.E.2d 761 (1946).

*pleado lesionado no fue el agresor cuando la riña ocurrió por razón del trabajo del patrono al cual estaban dedicados los empleados.* Señalamos que no surgía del espíritu de la Ley de Compensaciones por Accidentes del Trabajo, específicamente de su Art. 4, *supra*, proteger a un empleado agresor, aun cuando la contienda ocurriera por motivo del trabajo de su patrono a que se dedicaban los empleados lesionados.

En *Rodríguez v. Comisión Industrial,* supra, un empleado resultó muerto a causa de unas heridas de bala con motivo de una pelea con otro compañero de trabajo. El incidente ocurrió en el lugar de empleo durante horas laborables. No hubo prueba sobre el origen de la pelea ni de sus motivos, mas el obrero muerto era cuñado de su agresor. Reiteramos que "[l]a norma con respecto a casos de muerte de trabajadores como consecuencia de actos de agresión por parte de terceras personas ... es al efecto de que *el accidente no es compensable a menos que por la naturaleza y características del empleo se exponga al obrero a la posibilidad de ser lesionado,* o *que la agresión esté en alguna forma relacionada al empleo*". (Énfasis suplido.) Íd., pág. 122. Aclaramos que cuando no hay prueba alguna sobre el origen y motivo de la pelea, la Comisión Industrial no puede darle el beneficio de la duda a los beneficiarios del obrero fallecido. En caso de prueba conflictiva, donde haya duda sobre el origen de la pelea, se le debe dar el beneficio de la duda y, por ende, la compensación a los beneficiarios.

■ En síntesis, las normas que hasta ahora hemos acogido respecto a lesiones provenientes de agresiones de compañeros de empleo son: (1) serán compensables las lesiones surgidas de una riña en la cual el empleado lesionado no fue el agresor y la pelea ocurrió por razón del trabajo; (2) no serán compensables las lesiones del empleado agresor aun cuando la riña ocurra por razón del empleo; (3) de ordinario, serán compensables las lesiones

de todo empleado lesionado cuando exista prueba conflictiva sobre el origen de la pelea, y (4) no serán compensables las lesiones cuando no haya prueba sobre el origen y el motivo de la pelea.

## IV

*Sobre las agresiones neutrales o inexplicables*

Las agresiones intencionales pueden ser clasificadas en tres (3) categorías: las que tienen una relación causal con el empleo; las que son motivadas por asuntos inherentemente privados, y las que son neutrales o sea que no pueden ser clasificadas clara y contundentemente como consecuencia del empleo o de naturaleza privada. Como ejemplo de las agresiones neutrales se pueden incluir las que son producto de fuerzas irracionales, tales como ataques de lunáticos, borrachos y niños pequeños, las que son producto de un error y las que son sin motivo o inexplicables. *Larson's*, supra, Secs. 7 y 11.31.

Una agresión es inexplicable o sin motivo aparente cuando, por ejemplo, la identidad del agresor y/o los motivos son desconocidos, las circunstancias son ambiguas o no existe una seria relación o animosidad personal entre el empleado lesionado y su agresor. J.T. Sullivan, *Unexplained Accidents and Assaults: The Problems and Burdens of Proof under the Texas Workers Compensation Statute*, 16 Texas Tech. L. R. 875, 897 (1985).

Cuando las circunstancias del incidente que dio lugar a la agresión del empleado son básicamente desconocidas o inexplicables, el problema para determinar su compensabilidad es mayor. Sullivan, *supra*, pág. 875. Y en un caso como el de autos, en que el agresor del lesionado es un compañero de trabajo, es de vital importancia la relación entre las partes y el lugar donde ocurrió la agresión para decidir si la lesión es o no compensable. Íd.

Sobre las agresiones inexplicables, el profesor Larson expresa:

> Ocassionally an assault occurs for which no explanation whatever appears, either because the assault was unwitnessed, or because, even with all the facts available, no one can figure out why the assault was committed. Nothing connects it with the victim privately; neither can it be shown to have had a specific employment origin. If the claimant is in fact exposed to that assault because he is discharging his duties at that time and place, there is no better reason here than in the unexplained-fall or death cases to deny an award merely because claimant cannot positively show that the assault was motivated by something connected with work. Although the cases are more evenly divided on unexplained assaults than unexplained falls or deaths, there is now a demostrably large body of authority for awarding compensation on these facts than denying it. *Larson's,* supra, Sec. 11.33, págs. 3-106 y 3-107.

En la mayoría de las jurisdicciones que se han enfrentado a este tipo de casos, se le han otorgado los beneficios de compensación por accidentes de trabajo al empleado lesionado.[10] Otras jurisdicciones, sin embargo, aún están renuentes a ofrecer una compensación a las víctimas de

---

[10] *Motion Control Indus. v. Workmen's Comp. Appeal Bd.,* 603 A.2d 675 (1992); *Foley v. Honeywell, Inc.,* 488 N.W.2d 268 (1992); *Baltimore & Ohio R.R. Co. v. Taylor,* 589 N.E.2d 267 (1992); *Gordon v. Chrysler Motor Corp.,* 585 N.E.2d 1362 (1992); *Beck v. State,* 779 S.W.2d 367 (1989); *Blaw-Knox Foundry & Mill Mach. v. Dacus,* 505 N.E.2d 101 (1987); *North River Ins. Co. v. Purdy,* 733 S.W.2d 630 (1987); *Zahn v. Associated Dry Goods Corp.,* 655 S.W.2d 769 (1983); *Cotton Plant Plywood Corp. v. Speed,* 651 S.W.2d 470 (1983); *Walters v. American States Ins. Co.,* 654 S.W.2d 423 (1983); *Rodríguez v. Industrial Com'n.,* 447 N.E.2d 186 (1982); *Barge v. City of College Park,* 251 S.E.2d 580 (1978); *S & H Hot Spot v. Workmen's Compensation Appeal,* 395 A.2d 643 (1978); *Fireman's Fund American Insurance Co. v. Gomes,* 544 P.2d 1013 (Alaska 1976); *Workmen's Compensation App. Bd. v. Borough of Plum,* 340 A.2d 637 (1975); *Health & H. Gov. C., Cook Cty. Hosp. v. Industrial Comn.,* 338 N.E.2d 402 (1975); *Employers Mutual Liability Ins. Co. v. Rosenfeld,* 202 S.E.2d 678 (1973); *B & B. Nursing Home v. Blair,* 496 P.2d 795 (Okla. 1972); *Mayo v. Safeway Stores, Inc.,* 457 P.2d 400 (Idaho 1969); *Coomes v. Robertson Lumber Company,* 427 S.W.2d 809 (1968); *Mc Lean's Case,* 80 N.E.2d 40 (1948); *Ensley v. Grace,* 417 P.2d 885 (N.M. 1966); *Gagne v. Oreck,* 122 N.W.2d 589 (1963); *Lippman v. North Dakota Workmen's Comp. Bureau,* 55 N.W.2d 453 (N.D. 1952); *Casualty Reciprocal Exchange v. Johnson,* 148 F.2d 228 (5to Cir. 1945).

este tipo de agresión neutral.([11]) *Larson's*, supra, Sec. 11.33.

Ciertamente, existen inconsistencias respecto a las decisiones sobre reclamaciones de compensación por lesiones producto de agresiones súbitas e inexplicables (*unexplained assaults*).([12]) Con anterioridad, y aun en las jurisdicciones que rechazan la doctrina de la agresión neutral o inexplicable, el empleado reclamante debía demostrar una clara relación causal entre las condiciones del trabajo y la ocurrencia de la lesión. De esta forma, como en el análisis que nuestro Tribunal ha delineado para los casos de agresiones de terceros discutidos anteriormente, el empleado tenía que establecer que la agresión ocurrió en el curso de su empleo y como consecuencia de la naturaleza de sus deberes. Las jurisdicciones que han asumido unas posiciones más conservadoras exigen que la agresión no sólo haya

---

([11]) *Hanewinckel v. St. Paul's Prop. & Liability*, 611 So. 2d 174 (La. App. 1992), *writ denied*, 614 So. 2d 65 (La. 1993); *Davis v. Sewerage & Water Bd. of New Orleans*, 552 So. 2d 444 (La. App. 1989); *Mortgage Inv. Co. of El Paso v. Griego*, 771 P.2d 173 (N.M. 1989); *Metcalf v. A.M. Exp. Moving Systems*, 339 S.E.2d 177 (1986); *Ferguson v. Twin Hills Golf*, 679 S.W.2d 355 (1984); *Bagwelk v. Falcon Jet Corp.*, 649 S.W.2d 841 (1983); *Foster v. Johnson*, 576 S.W.2d 187 (1979); *Bagget Transp. Co of Birmingham v. Dillon*, 248 S.E.2d 819 (1978); *Schroeter v. Industrial Commission*, 342 N.E.2d 3 (1976); *Wolfe v. Shorey*, 290 A.2d 892 (1972); *Siebert v. Hoch*, 428 P.2d 825 (Kan. 1967); *American Brake Shoe Company v. Industrial Com'n*, 169 N.E.2d 256 (1960); *Francis v. Liberty Mutval Insurance Company*, 97 S.E.2d 553 (1957); *Toole v. Bechtel Corporation*, 291 S.W.2d 874 (1956); *Math Igler's Casino, Inc. v. Industrial Commission*, 68 N.E.2d 773 (1946); *Rock Mountain Fuel Co. v. Kruzic*, 30 P.2d 868 (Co. 1934).

([12]) Véanse los casos citados en los escs. 10 y 11. La gran mayoría de los casos que han rechazado aplicar la doctrina tratan de agresiones que han ocurrido: (1) antes de que el empleado llegue al trabajo o después de salir de éste, o (2) por motivos personales. Véanse, por ejemplo: *Ferguson v. Twin Hills Golf Club*, supra (la agresión ocurrió mientras el empleado estaba camino a la oficina); *Hanewinckel v. St. Paul's Prop. & Liability*, supra (la agresión ocurrió en el estacionamiento del lugar de empleo); *Davis v. Sewerage & Water Bd. of New Orleans*, supra (el empleado fue agredido frente a su casa al éste regresar a buscar su "beeper"); *Metcalf v. A.M. Exp. Moving Systems*, supra (el empleado fue agredido mientras estaba dormido en su camión esperando el cargamento).

En cambio, la gran mayoría de los casos en que se ha adoptado la doctrina, tratan de agresiones acaecidas en circunstancias similares a las del caso de autos. Véanse, por ejemplo, *Townsend Paneling, Inc. v. Butler*, 448 S.W.2d 347 (1969); *Rodríguez v. Industrial Com'n*, supra; *Fregeau v. Gillespie*, 451 N.E.2d 870 (1983).

ocurrido durante horas laborables en los predios del lugar de trabajo, sino que también haya sido el resultado probable de la naturaleza de las funciones del empleado.[13]

Otras jurisdicciones han equiparado el análisis al utilizado en la doctrina del riesgo posicional.[14] Esta interpretación más liberal sólo exige que la agresión haya ocurrido en el curso del trabajo, y provee una compensación aun cuando la identidad del agresor sea desconocida o la agresión no esté relacionada con el empleo. *Larson's*, supra, Secs. 7, 7.30 y 11.31.[15]

▪ Dado el caso de que nuestra Ley de Compensaciones por Accidentes del Trabajo es un sistema de protección social para proveer apoyo económico y tratamiento adecuado al obrero lesionado, *Pacheco Pietri y otros v. E.L.A. y otros*, supra, págs. 914–917, adoptamos, por considerarla afín con estos propósitos, la doctrina de agresiones neutrales o inexplicables, con su interpretación liberal, para ofrecer cubierta en aquellos casos en que un empleado resulte lesionado a consecuencia de una agresión sin motivo aparente e inexplicable. De no hacerlo así, se frustrarían los propósitos sociales y humanitarios de nuestra legislación compensatoria. Cualquier pronunciamiento que sea contrario a la doctrina que hoy adoptamos queda revocado.

▪ El empleado que reclame una compensación producto de una agresión neutral o inexplicable, o los beneficiarios de éste, si es que murió por causa de la agresión,

---

[13] Como ejemplos de casos similares al de autos, véanse: *Smith v. Lannert*, 429 S.W.2d 8 (1968); *American Brake Shoe Company v. Industrial Commission*, supra; *Math Igler's Casino, Inc. v. Industrial Commision*, supra.

[14] Al respecto, véase 1 *Larson's Compensation Law* Sec. 11.40 (1989).

[15] Por ejemplo, en casos similares al de autos, véanse: *Gordon v. Chrysler Motor Corp.*, supra; *Cotton Plant Plywood Corp. v. Speed*, supra; *Daniels v. Swofford*, 286 S.E.2d 582 (1982); *Rodríguez v. Industrial Com'n*, supra; *Alpine Roofing Company v. Dalton*, 539 P.2d 487 (Colo. App. 1975); *Towsend Paneling, Inc. v. Butler*, supra; *Mayo v. Safeway Stores, Inc.*, supra; *Williams v. Smith*, 435 S.W.2d 808 (1968); *Ensley v. Grace*, supra; *Petersen's Case*, 25 A.2d 240 (1942).

deberá establecer que: (1) el incidente que dio lugar a su reclamación ocurrió durante el curso de sus labores; (2) la agresión no fue consecuencia de una animosidad personal o de índole privada, y (3) los motivos de la agresión son inexplicables. Luego que deje establecida la naturaleza neutral de la agresión sufrida, el F.S.E. podrá refutar la prueba.

## V

*Aplicación de la doctrina*

En el caso de autos, el obrero reclamante estaba desempeñando sus funciones como conserje cuando fue agredido por otro empleado de la Autoridad. Como bien concluyó el tribunal de instancia, "la naturaleza y características de su empleo como conserje no lo exponían a la posibilidad de ser lesionado" y "la agresión de la que Ortiz fue objeto no estuvo relacionada a sus funciones como empleado de limpieza". Ahora bien, de la prueba creída por la Comisión Industrial surge que no hubo razón aparente para la agresión; que para la fecha del incidente, el agresor había estado involucrado en dos (2) incidentes de violencia con compañeros de trabajo de la Autoridad; que posterior al incidente de autos, fue despedido de la Autoridad por actos de sabotaje contra el patrono, lo que ofrece indicios de su carácter violento.[16]

Aunque el empleado reclamante es el responsable de demostrar que el accidente sufrido es compensable, una vez éste demuestra que el ataque fue inexplicable, súbito y sin motivo aparente, le corresponde al F.S.E. refutar dicha alegación.

---

[16] En *Petersen's Case*, supra, el tribunal expresó que cuando un patrono conoce de la ocurrencia de pasados incidentes de violencia, protagonizados por un empleado, y no toma acción para prever futuros problemas de agresión, una agresión producto del carácter violento de dicho empleado puede ser considerada como una neutral y es compensable.

En el caso de autos no se demostró que hubo justificación alguna para la agresión. El F.S.E. tampoco logró convencer a la Comisión Industrial de que el lesionado inició la riña o de que existía una motivación puramente privada o personal producto de una relación de animosidad entre ambos empleados. Al menos la Comisión Industrial no lo creyó así.([17]) Por lo tanto, tenemos que concluir que el reclamante fue una víctima inocente de un ataque abusivo, sin motivo alguno e inexplicable.

Por todo lo antes expuesto, *se dictará sentencia revocando la emitida por el Tribunal Superior, Sala de San Juan, y se deja en vigor la Resolución de la Comisión Industrial que declara compensable el accidente sufrido por el obrero Jorge Ortiz Pérez.*

Los Jueces Asociados Señores Negrón García y Alonso Alonso no intervinieron.

---

([17]) En su alegato, la parte recurrida alega que el obrero reclamante inició la cadena de eventos que culminaron en la agresión con bromas pesadas sobre la persona del agresor. Sin embargo, esto no se desprende de las conclusiones de hecho de la Comisión Industrial.